## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL CELESTINE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-1353** |
| **MARLIN N. GUSMAN, SHERIFF** | **SECTION: "R"(1)** |

## REPORT AND RECOMMENDATION

Plaintiff, Michael Celestine, a state inmate, filed this federal civil rights complaint against Orleans Parish Sheriff Marlin N. Gusman.  In this lawsuit, plaintiff claimed that he was subjected to unconstitutional conditions of confinement and did not receive adequate medical care while incarcerated at the Orleans Parish Prison.[1]

To better understand the factual bases of plaintiff's claims, the Court held a Spears hearing on May 13, 2015.[2]  At that hearing, plaintiff elaborated on his claims as follows:

While incarcerated, plaintiff received no medical treatment after being stabbed in the head. Although he did not submit a "sick call" request with respect to the injury, he believes that he should nevertheless have been taken to the medical department.  Approximately one week later, he asked a nurse for assistance.  The nurse then took him to the medical department to clean the wound; however, she told him that he could not be sent to the hospital for stitches at that point because the wound was already healing.

---

[1] Plaintiff is currently incarcerated at the Allen Correctional Center in Kinder, Louisiana.

[2] See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998).  The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement.  Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).  Spears hearing testimony becomes a part of the total filing by the *pro se* applicant.  Id.

Plaintiff also testified that he had a preexisting gunshot wound in his leg for which he had taken pain medication in the past.  At the jail, medical officials discontinued the medication he had been taking and switched him to Tylenol.  He complained that that Tylenol did not help him, and he wanted his original medication reinstated.  The medical staff refused, saying that the original medication was for diabetes and was inappropriate for plaintiff because he is not diabetic.

Plaintiff also testified that the jail was unsanitary.  He noted that there was rust, mold, and mildew "all over" and that inmates were not regularly given cleaning supplies to combat those conditions.

Lastly, plaintiff conceded that Sheriff Gusman was not personally involved in the foregoing events, noting that he was named as a defendant simply because he is the sheriff and aware of the jail conditions.

Defense counsel thereafter produced certified copies of plaintiff's medical records and grievance records.  Those records have been filed into this federal record[3] and copies have been provided to plaintiff for his review and use in this proceeding.

I.  Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).[4]  Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –

---

[3] Rec. Doc. 9.
[4] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  28 U.S.C. § 1915A(c).

> (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i)    is frivolous or malicious;
>
> (ii)    fails to state a claim on which relief may be granted; or
>
> (iii)    seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches

3

Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).

The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint,[5] and fully considering his Spears hearing testimony, the undersigned recommends that, for the following reasons, the complaint be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

## II.  Plaintiff's Claims

### A.  Physical Conditions of Confinement

Plaintiff was a pretrial detainee at the time he filed this lawsuit.[6]  It is clear that "the Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment."  Collins v. Ainsworth, 382 F.3d 529, 540 (5th Cir. 2004) (internal quotation marks omitted).  Nevertheless, the jurisprudence recognizes that the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of trivial inconveniences.  Further, such judicial restraint is appropriate because the federal constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees.  Bell v. Wolfish, 441 U.S. 520, 539 n.21 (1979); Ruiz v. El Paso

---

[5] The Court must liberally construe a *pro se* civil rights complaint.  See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

[6] See Rec. Doc. 1, p. 3.

Processing Center, 299 Fed. App'x 369, 371 (5th Cir. 2008); Maddox v. Gusman, Civ. Action No. 14-2435, 2015 WL 1274081, at *3 (E.D. La. Mar. 19, 2015).  For the following reasons, it is apparent that the physical conditions at the jail alleged by plaintiff, while unpleasant, concern nothing more than *de minimis* inconveniences which do not constitute "punishment" or otherwise rise to the level of constitutional violations.

As noted, plaintiff complained that mold, mildew, and rust were present in the jail. Obviously, there is a point beyond which a prison's conditions are so unsanitary as to render them unconstitutional.  See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional).  That said, it must be remembered that, although prisons should be reasonably clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." McAllister v. Strain, Civ. Action No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009); accord Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions.").  And on this point, the jurisprudence is clear:  the presence of mold, mildew, and rust in a jail does not rise to the level of a constitutional violation.  Bean v. Pittman, Civ. Action No. 14-2210, 2015 WL 350284, at *2 (E.D. La. Jan. 26, 2015); Simmons v. Gusman, Civ. Action No. 14-1907, 2015 WL 151113, at *4 (E.D. La. Jan. 12, 2015); accord Mitchell v. Jefferson Parish Correctional Center, Civ. Action No. 13-4963, 2013 WL 6002770, at *6 (E.D. La. Nov. 12, 2013); Sneeze v. Terrebonne Parish Sheriff's Office, Civ. Action No. 11-987, 2011 WL 2413464, at *3 (E.D. La. May 9, 2011), adopted, 2011 WL 2311867 (E.D. La. June 10, 2011); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826,

at *3 (E.D. La. Oct. 1, 2009); McCarty v. McGee, No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation."). Accordingly, plaintiff's claims concerning the physical conditions at the jail should be dismissed.

### B.  Medical Care

With respect to plaintiff's claim that he received inadequate medical care, that claim should likewise be dismissed for the following reasons.

As an initial matter, the Court notes that plaintiff has not named a proper defendant with respect to a medical claim. The sole defendant sued in this lawsuit is Sheriff Gusman. However, plaintiff has not stated a proper claim against Sheriff Gusman in either his official or his individual capacity.

As to any claim against Sheriff Gusman in his official capacity, it is clear that "[o]fficial capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, any official-capacity claim against Sheriff Gusman would in reality be a claim against the local governmental body itself. Picard v. Gusman, Civ. Action No. 12-1966, 2012 WL 6504772, at *4 (E.D. La. Nov. 26, 2012), adopted, 2012 WL 6504528 (E.D. La. Dec. 13, 2012); Alexander v. City of Gretna, Civ. Action No. 06-5405, 2010 WL 3791714, at *3 (E.D. La. Sept. 17, 2010); Weatherspoon v. Normand, Civ. Action No. 10-060, 2010 WL 724171, at *2-3 (E.D. La. Feb. 22, 2010). However, as the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under
> Section 1983 for the misconduct of one of its employees, a plaintiff must initially

> allege that an official policy or custom was a cause in fact of the deprivation of
> rights inflicted.  To satisfy the cause in fact requirement, a plaintiff must allege that
> the custom or policy served as a moving force behind the constitutional violation
> at issue or that [his] injuries resulted from the execution of an official policy or
> custom.  The description of a policy or custom and its relationship to the underlying
> constitutional violation, moreover, cannot be conclusory; it must contain specific
> facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted).  Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009).  Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights.  See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3.  In the instant case, plaintiff does not allege that his rights were violated as a result of a policy or custom, much less identify such a policy or custom.  For that reason, it is clear that he has failed to state a proper claim against Sheriff Gusman in his official capacity.

Plaintiff likewise has not stated a proper individual-capacity claim against Sheriff Gusman. "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation.  This standard requires more than conclusory assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted).  Moreover, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).  In this lawsuit, plaintiff does not allege any personal involvement on the part of

Sheriff Gusman in plaintiff's medical care.  On the contrary, plaintiff conceded at the <u>Spears</u> hearing that there was no such personal involvement on the sheriff's part, explaining that he sued Sheriff Gusman simply because he is the head of the jail.  However, Sheriff Gusman cannot be held liable pursuant to 42 U.S.C. § 1983 under any theory of strict liability[7] or vicarious liability.[8]

In any event, it is clear that, even if plaintiff had named a proper defendant or were allowed an opportunity to amend his complaint to attempt to name one, his underlying medical claim would still fail.  Obviously, all inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail.  However, that right is a limited one, and an inmate's constitutional right to medical care is violated only if his "serious medical needs" are met with "deliberate indifference" on the part of penal authorities.  <u>See</u> <u>Thompson v. Upshur County, Texas</u>, 245 F.3d 447, 457 (5th Cir. 2001); <u>Harris v. Hegmann</u>, 198 F.3d 153, 159 (5th Cir. 1999).

Turning first to plaintiff's claim concerning the lack of medical care for his head wound, that claim is patently frivolous.  As noted, plaintiff testified at the <u>Spears</u> hearing that he did not even submit a "sick call" request for medical attention.  There can be no doubt that he knew how to submit such a request, in that his medical records overflow with "sick call" requests concerning other medical problems.  The fact that he, by his own admission, submitted no such request for his head wound after being stabbed belies any suggestion that he believed medical attention was needed for the wound, which did in fact heal on its own.  Further, plaintiff's failure to submit such

---

[7] <u>Harris v. Greer</u>, 750 F.2d 617, 618 (7th Cir. 1984) ("[T]here is no concept of supervisor strict liability under section 1983."); <u>see also</u> <u>Jenkins v. Wood</u>, 81 F.3d 988, 994 (10th Cir. 1996); <u>Evans v. Gusman</u>, Civ. Action No. 08-703, 2008 WL 2223281, at *2 (E.D. La. May 23, 2008); <u>Castillo v. Blanco</u>, Civ. Action No. 07-215, 2007 WL 2264285, at *5 (E.D. La. Aug. 1, 2007).

[8] <u>Thompkins v. Belt</u>, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."); <u>see also</u> <u>Oliver v. Scott</u>, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability."); <u>Evans</u>, 2008 WL 2223281, at *2.

a request negates the possibility of deliberate indifference.  Obviously, "[a] defendant cannot be said to be deliberately indifferent to a medical need of which he/she was unaware."  Marroquin v. Helen, No. C 12-617, 2012 WL 1748019, at *2 (N.D. Cal. May 16, 2012); accord Hewitt v. California, No. 1:09-cv00661, 2011 WL 2078013, at *4 (E.D. Cal. May 25, 2011) ("If the Defendant was unaware of the serious medical condition, he cannot be deliberately indifferent to it.").

With respect to plaintiff's medical claim concerning inadequate medical care for pain associated with the preexisting gunshot wound to his leg, the undersigned will assume for the purposes of this opinion that the pain was a "serious medical need."[9]  Nevertheless, that claim still fails because, for the following reasons, plaintiff cannot show that the need was met "deliberate indifference."

Regarding the "deliberate indifference" requirement, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.  Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted).  "Deliberate indifference encompasses only unnecessary

---

[9] "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

and wanton infliction of pain repugnant to the conscience of mankind." <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997); <u>see also</u> <u>Stewart v. Murphy</u>, 174 F.3d 530, 534 (5th Cir. 1999).

It is clear that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995). That is the case here. In the instant case, the Court ordered the Orleans Parish Sheriff's Office to produce copies of plaintiff's medical records, and, as noted, those records have been filed into this federal record. The records reflect that plaintiff has received continued evaluations and care for a variety of medical needs while incarcerated at Orleans Parish Prison, including but not limited to pain from the gunshot wound. With respect to that medical condition, the records include the following information:

11/14/12    A medical intake screening was conducted which reflected that plaintiff was not currently on any medications and had no medical complaints.

11/16/12    An initial health assessment was conducted which reflected that plaintiff was not currently on any medications and had no medical complaints.

05/15/13    The medical staff collected a "sick call" request from plaintiff. In that request, he complained that he was in pain from a prior gunshot wound which caused nerve damage. The nursing notes reflected that plaintiff was in no apparent distress.

06/25/13    Plaintiff was seen in the medical department complaining of pain. He was prescribed Naprosyn (Naproxen), an NSAID pain reliever.

07/11/13    The medical staff collected a "sick call" request from plaintiff. In that request, he asked for stronger pain medication. The nursing notes reflected that he was currently receiving Naprosyn. He was referred to the jail physician.

08/05/13    Plaintiff was seen in the medical department complaining of pain. He reported that the Naprosyn was not working. He was prescribed Neurontin (Gabapentin), an anticonvulsant drug also used to treat diabetic neuropathy and other nerve pain, and Tylenol (Acetaminophen).

08/22/13    The medical staff collected a "sick call" request from plaintiff. In that request, he complained that he needed more pain medication because he was experiencing pain when he exercised. The nursing notes reflected that he was currently prescribed Neurontin and Tylenol. He was referred to the jail physician.

09/06/13    Plaintiff was seen in the medical department. He reported that the Neurontin was working well but the Tylenol was not. The Tylenol was discontinued.

09/13/13    Plaintiff was seen in the medical department complaining that his pain medication was not working. He was switched to Ibuprofen.

10/09/13    An annual health assessment was conducted. Plaintiff complained of pain from a gunshot wound, and he was prescribed an increased dosage of Neurontin.

01/08/14    The medical staff collected a "sick call" request from plaintiff. In that request, he complained that his pain medication was no longer working. He was referred to the jail physician.

01/12/14    Plaintiff was seen in the medical department. He complained that his pain medication was not working due to a change in the weather. It was ordered that he be given an extra blanket, and he was referred to jail physician.

02/19/14    Plaintiff was seen in the medical department. He reported that the pain from his gunshot wound was improved, although he experienced occasional irritation during exercise. It was noted that he had been prescribed Neurontin and was to be given pain medication as needed.

03/31/14    The medical staff collected a "sick call" request from plaintiff. In that request, he asked that his prescription for Neurontin be refilled. He was referred to the jail physician.

05/14/14    Plaintiff was seen in the jail medical department concerning his request to have his pain medication refilled. He was again prescribed Neurontin.

11

08/03/14   The medical staff collected a "sick call" request from plaintiff.  In that request, he asked that his pain medication be refilled.  He was referred to the jail physician.

08/11/14   Plaintiff was examined by the jail physician.

09/03/14   An annual health assessment was conducted.

10/18/14   The medical staff collected a "sick call" request from plaintiff.  In that request, he asked that his prescription for Neurontin be refilled.  He was referred to the jail physician.

11/10/14   The medical staff another collected a "sick call" request from plaintiff asking that his prescription for Neurontin be refilled.  He was referred to the jail physician.

11/13/14   Plaintiff was examined by the jail doctor for his complaint concerning his pain medication.  Plaintiff was prescribed Tylenol.

11/17/14   Plaintiff was examined in the jail medical department concerning his request for a refill of his pain medication.  The jail physician discontinued plaintiff's prescription for Neurontin and substituted Naprosyn and Tylenol.

11/21/14   The medical staff another collected a "sick call" request from plaintiff requesting that his prescription for Neurontin be refilled.  He was referred to the jail physician.  The nursing notes from the evaluation noted that he was currently receiving Tylenol and Naprosyn for pain.  He was referred to the jail physician.

12/16/14   Plaintiff was examined in the medical department.  He reported that he had an old gunshot wound for which he took Neurontin in the past.  He stated that Tylenol and Naprosyn do not help him with the pain.

In light of the foregoing, it is evident that plaintiff's medical complaints of pain were not ignored.  On the contrary, he was repeatedly been examined after submitting sick call requests, and he was treated with a variety of medications.  Although he is disagreed with the discontinuation of his prescription for Neurontin, that is of no moment.  An inmate has no right to be prescribed a

particular medication for pain, and the fact that he disagrees with the prison medical staff concerning which pain medication is appropriate is not actionable under § 1983. <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir.1997); <u>Williams v. Chief of Medical Operations, Tarrant County Jail</u>, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994) (a refusal to provide an inmate with the specific pain killers he requests does not rise to the level of a constitutional violation); <u>Billizone v. Jefferson Parish Correctional Center</u>, Civ. Action No. 14-1263, 2014 WL 7139636, at *4 (E.D. La. Dec. 15, 2014); <u>Jacobs v. McVea</u>, Civ. Action No. 14-552, 2014 WL 2894286, at *7 (E.D. La. June 25, 2014). This is true even if the medication chosen by a prison doctor is not as effective as an alternative the prisoner would prefer, because the fact that a prisoner's medical care "may not have been the best money could buy" is insufficient to establish a federal violation. <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir. 1992); <u>see also</u> <u>Gobert v. Caldwell</u>, 463 F.3d 339, 349 (5th Cir. 2006) ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); <u>McMahon v. Beard</u>, 583 F.2d 172, 174 (5th Cir.1978).  Moreover, where, as here, an inmate has in fact received medical treatment, federal constitutional protections are not violated just because that treatment was unsuccessful or because pain persisted despite the treatment. <u>Gobert</u>, 463 F.3d at 346; <u>Williams</u>, 1994 WL 733493, at *2; <u>Kron v. Tanner</u>, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D .La. May 19, 2010), <u>adopted</u>, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).

Further, as already noted, "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment." <u>Estelle v. Gamble</u>, 429 U.S. 97, 107 (1976).  Generally, such matters of professional medical judgment are better left to the expertise of medical personnel rather than to the legal expertise of judges.  Federal courts are

therefore reluctant to second-guess such medical decisions in federal civil rights actions. <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); <u>Castro v. Louisiana</u>, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). There is no basis whatsoever to engage in such second-guessing here.

In summary, the determinative issue before the Court is not whether plaintiff's medical treatment was subpar in some respect, whether his medical problem persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether he had a serious medical need which was met with deliberate indifference. He did not. Accordingly, even if plaintiff had named a proper defendant, which he did not, his medical claim would still be subject to dismissal because it is legally frivolous.

<u>**RECOMMENDATION**</u>

It is therefore **RECOMMENDED** the complaint be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>,

79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[10]

New Orleans, Louisiana, this first day of October, 2015.

_____

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[10] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.